UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH JASMAN,

                Plaintiff,                      Case No. 1:11-cv-275

v.                                              Honorable Paul L. Maloney

UNKNOWN STRAUSS et al.,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on immunity grounds and/or for failure to state a claim.

**Factual Allegations**

Plaintiff presently is incarcerated at the Bellamy Creek Correctional Facility but complains of events that occurred at both Lakeland Correctional Facility (LCF) and St. Louis Correctional Facility (SLF). Plaintiff sues the following LCF employees: Lieutenant Strauss, Corrections Officer J. Miller, Hearing Officer A. Wright, Deputy Wardens Bonita Hoffner and Deputy Warden Dan Hawkins, Unit Manager (unknown) Houtz and Grievance Coordinator Steven Winchester. He also sues SLF Warden Nick Ludwick and Hobby Craft Director M. Card.

Plaintiff's complaint concerns the seizure of his property at LCF and his subsequent transfer to SLF, a security level IV prison. While at dinner on April 16, 2009, Plaintiff alleges that an officer confiscated property from his cell without his permission. When Plaintiff returned to his cell, he found all of his property missing. Plaintiff never received a receipt or a notice of removal for his property. When he asked an officer what happened to his property, the officer said that the property was taken to the control center. Later that day, Plaintiff was escorted to temporary segregation. Lieutenant Strauss subsequently issued Plaintiff a Major Misconduct Report. According to the Major Misconduct Report, Plaintiff was charged with possession of dangerous contraband. Apparently, several detailed maps of prisons and camps of the Michigan Department of Corrections (MDOC) were found in Plaintiff's cell. Plaintiff, however, claims that the maps were part of a book set, "Michigan Criminal Appeals: Practice and Procedure," Second Edition, that he bought from the State Appellate Defender's Office (SADO) in 1989 (SADO book set). (Compl., docket #1, Page ID #7.)

On April 22, Plaintiff received a hearing on the major misconduct ticket by Hearing Officer Wright. Plaintiff explained to Wright that he purchased the maps over twenty years ago.

Plaintiff requested to go to his footlocker to obtain the receipt for the SADO book set and for a 2001 administrative hearing report on the book set.  In the administrative hearing report, a hearing officer apparently found the SADO set to be legitimate legal materials.  Wright, however, refused to grant Plaintiff's requests.  Wright ultimately found Plaintiff guilty of possessing dangerous contraband.  He sentenced Plaintiff to seven days of toplock and fourteen days of loss of privileges.  Wright did not give Plaintiff any credit for the time he had already spent in temporary segregation.

During a security classification meeting on April 23, 2009, Defendants Hawkins and Houtz reclassified Plaintiff to security level IV.  Plaintiff claims that the increase in his security level was "arbitrary, capricious and retaliatory." (Comp., docket #1, Page ID#8.)  Hawkins explained that he was transferring Plaintiff to a higher security level because of the nature of Plaintiff's major misconduct ticket.  Plaintiff claims that he was reclassified in violation of MDOC policy.  Plaintiff was eventually transferred to SLF, a level IV facility.

On May 5, 2009, Plaintiff requested a rehearing on his major misconduct ticket.  Plaintiff's request was eventually approved.  At the rehearing, Plaintiff was found not guilty of the major misconduct violation.

On June 7, 2009, Plaintiff wrote LCF Deputy Warden Hoffner to determine who authorized Lieutenant Strauss to take his property to the control center and search his property.  Hoffner never responded.

Because of Plaintiff's transfer to a level IV facility, Plaintiff could not keep his hobby craft material.  At first, Plaintiff intended to mail the hobby craft items to someone outside the prison and he prepared a disbursement authorization.  Plaintiff, however, changed his mind.  Plaintiff ultimately decided to have the hobby craft items destroyed.  Plaintiff claims that his hobby craft

items were never destroyed as he requested. In August 2009, Plaintiff learned that the MDOC had removed funds of $6.25 and $4.95 from his prison trust account on June 17, 2009.[1] On August 15, 2009, Plaintiff filed a grievance, Grievance No. SLF-09-08-1074-01B, against SLF accounting for removing the funds from his prison trust account. Plaintiff noted that the date on the disbursement checks was the same date that he was called out by Hobby Craft Director M. Card to either dispose of or send out his hobby craft material. Plaintiff claims that if he would not have been sent to a level IV facility, he would not have lost his hobby craft material.

On August 15, 2009, after filing a Freedom of Information Act (FOIA) Request, Plaintiff finally received the Contraband Removal Record Receipt for the removal of his property on April 16, 2009. The receipt was prepared by Officer J. Miller. According to the Contraband Removal Record Receipt, the contraband was turned over to Deputy Warden Hoffner for inspection.

On November 22, 2009, Plaintiff sent the LCF warden a letter regarding the shakedown of his cell. On December 9, 2009, LCF Deputy Warden Hoffner responded to Plaintiff's letter but Plaintiff claims that she did not address his concerns. On December 14, Plaintiff wrote Hoffner directly about his claims, however, Hoffner never responded.

Plaintiff argues that he should have been transferred back to LCF after he was found not guilty at his rehearing for the major misconduct conviction. Plaintiff filed a grievance and wrote several supervisors to help transfer him but he never received a response. Plaintiff complains that Warden Ludwick had an obligation to see that Plaintiff was transferred from SLF, a level IV facility,

---

[1]According to Plaintiff's Step II grievance response for Grievance No. SLF-09-28-01074-01b, the charge of $4.95 was refunded back to Plaintiff's account. (*See* MDOC Step II Grievance Response, docket #1-3, Page ID#43.) In his request for relief, Plaintiff only requests for reimbursement of the withdrawal of $6.25 from his prison trust account.

to a level II facility after his misconduct was overturned. Plaintiff argues that he should not have had to wait seven months before being transferred to a level II facility.

On July 21, 2010, Plaintiff was transferred to Ionia Maximum Correctional Facility (IBC). Although IBC has a few units reserved for security level II prisoners, Plaintiff complains that the rules and movement within IBC are similar to a level IV facility.

Plaintiff alleges that the shakedown and seizure of his property was illegal and in violation of MDOC policies, procedures, administrative rules and statutes. Plaintiff filed several grievances regarding the handling of the shakedown of his cell. As to his grievances, Plaintiff complains that Defendant Winchester wrongly denied several of his grievances as duplicative of Grievance No. LCF-2009-05-0432-19z2. Plaintiff also sent several FOIA requests for copies of the shakedown logs pertaining to the property removal to no avail.

For relief, Plaintiff requests monetary damages of $281,674.61.

## Discussion

I. Immunity

Plaintiff sues Hearing Officer Wright. Defendant Wright is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the

Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for damages based on actions taken in their capacities as hearing officers. *Id.*; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Because Plaintiff only requested monetary damages for relief, the Court will dismiss Plaintiff's complaint against Defendant Wright on immunity grounds.

      II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

- 6 -

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Respondeat Superior

Plaintiff fails to make specific factual allegations against Assistant Deputy Warden Hoffner, other than his claim that Hoffner failed to conduct an investigation in response to his grievances and letters. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not

be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Hoffner engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Hoffner.

### B. Due Process - Grievances

Plaintiff asserts that Grievance Coordinator Winchester wrongly denied his grievances as duplicative of another grievance. Plaintiff's allegations against Defendant Winchester implicate the Due Process Clause of the Fourteenth Amendment.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Winchester's conduct did not deprive him of due process.

Furthermore, the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to

act," the defendant cannot be liable under § 1983. *Shehee*, 199 F.3d at 300. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *See id.* Plaintiff, therefore, fails to state a due process claim against Defendant Winchester.

### C. Due Process - Major Misconduct Ticket

Plaintiff complains that (1) he wrongly received a major misconduct ticket from Lieutenant Strauss for possessing contraband; (2) Hearing Officer Wright refused to allow Plaintiff to present evidence of a receipt for the SADO book set and of a 2001 administrative hearing report on the SADO book set; (3) Wright refused to give Plaintiff credit for the time Plaintiff served in temporary segregation; and (4) Officer Miller never gave Plaintiff his Contraband Removal Record Receipt for the removal of the SADO book set.

Plaintiff's claims regarding his major misconduct ticket arguably implicate the Due Process Clause of the Fourteenth Amendment. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicates a liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather, the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a

- 9 -

>shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011. In the absence of a demonstrated liberty interest, plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Although Plaintiff states that he was sentenced to seven days of toplock and fourteen days of loss of privileges his major misconduct did not result in an extension of the duration of his sentence or some other atypical hardship. Because Plaintiff has not identified a significant and atypical deprivation arising from his conviction, his due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due-process claims against Defendants Strauss, Wright and Miller fail to state a claim.[3]

### D.    Due Process - Removal of Property

Plaintiff complains that Officer Miller wrongly removed his property on April 16, 2009, and did not provide a receipt for the property or a notice of the removal. Plaintiff also claims that Defendant Card deprived him of his hobby-craft materials.[4] Finally, Plaintiff alleges that he should never have been charged $6.25 from his prison trust account because he requested that the MDOC destroy his hobby craft materials.

Plaintiff's due-process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."

---

[3]The Court previously found that Hearing Officer Wright is also immune from monetary damages.

[4]The Court notes that the *Parratt* case, like the instant case, involved a prisoner's allegations that he had been deprived of his hobby materials without due process. *Parratt*, 451 U.S. at 530.

*Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claims are premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a due-process claim against Defendants Miller and Card.

### E. Fourth Amendment

Plaintiff claims that Defendants violated his Fourth Amendment rights by removing property from his cell. The Fourth Amendment protects "against unreasonable searches and seizures." U.S. CONST. AM. IV. The Fourth Amendment, however, applies only when "the person invoking its protection can claim a justifiable, a reasonable or a legitimate expectation of privacy that has been invaded by government action." *Hudson*, 468 U.S. at 525. In *Hudson*, 468 U.S. at 525-26, the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches. Further, in *Hudson*, the Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n.8. The Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* Because "the Fourth Amendment's proscription against unreasonable searches [and seizures] is inapplicable in a prison cell," Plaintiff fails to state a claim against Defendants for the search and seizure of his property in his cell. *Id.*

### F. First Amendment

Plaintiff claims that Defendants Hawkins and Houtz retaliated against him by transferring him from a level II facility to a level IV facility. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* at 394. Moreover,

Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim fails the first prong. Plaintiff has not alleged that he was engaged in any protected conduct. Certainly, receiving a major misconduct ticket is not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct.)

Even if Plaintiff had satisfied the first prong by engaging in protected conduct, the transfer of Plaintiff between prisons was not an adverse action taken against him. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing

a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010).

Plaintiff's transfer was from a level II facility to a level IV facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer; he only alleges that he had to give up his hobby craft materials. Therefore, the transfer was insufficient to constitute an adverse action. In summary, Plaintiff fails to state a claim for retaliation.

### G. State Law

Plaintiff claims that Defendants violated his constitutional rights under the Michigan constitution, state statutes, common law and MDOC policy directives. Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal

law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: September 12, 2011         /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  Chief United States District